IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

ANDREW THOMAS KUPIEC      )
                          ) No.  20-1240
   v.                     )

KILOLO KIJAKAZI,
Acting Commissioner
of Social Security


**OPINION AND ORDER**

**SYNOPSIS**

In this action, Plaintiff filed an application for supplemental social security income under Social Security Act, based on mental impairments, including those related to autism.  Plaintiff's application was denied initially and upon hearing by an Administrative Law Judge ("ALJ").  The Appeals Council denied his request for review.  Before the Court are the parties' Cross-Motions for Summary Judgment.  For the following reasons, Plaintiff's Motion will be granted, and Defendant's denied, and this matter remanded for further proceedings.

**OPINION**

**I.   STANDARD OF REVIEW**

Judicial review of the Commissioner's final decisions on disability claims is provided by statute. 42 U.S.C. §§ 405(g) 6 and 1383(c)(3) 7. Section 405(g) permits a district court to review the transcripts and records upon which a determination of the Commissioner is based, and the court will review the record as a whole. See 5 U.S.C. §706. When reviewing a decision, the district court's role is limited to determining whether the record contains substantial evidence to support an ALJ's findings of fact. Burns v. Barnhart, 312 F.3d 113, 118 (3d Cir. 2002).

1

Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate" to support a conclusion. Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995) (quoting Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971)). Substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." Consolo v. Fed. Maritime Comm'n, 383 U.S. 607, 620, 86 S. Ct. 1018, 16 L. Ed. 2d 131 (1966).  If the ALJ's findings of fact are supported by substantial evidence, they are conclusive. 42 U.S.C. § 405(g); Richardson, 402 U.S. at 390.

A district court cannot conduct a de novo review of the Commissioner's decision, or re-weigh the evidence of record; the court can only judge the propriety of the decision with reference to the grounds invoked by the Commissioner when the decision was rendered.  Palmer v. Apfel, 995 F.Supp. 549, 552 (E.D. Pa. 1998); S.E.C. v. Chenery Corp., 332 U.S. 194, 196 - 97, 67 S. Ct. 1575, 91 L. Ed. 1995 (1947).  Otherwise stated, "I may not weigh the evidence or substitute my own conclusion for that of the ALJ. I must defer to the ALJ's evaluation of evidence, assessment of the credibility of witnesses, and reconciliation of conflicting expert opinions. If the ALJ's findings of fact are supported by substantial evidence, I am bound by those findings, even if I would have decided the factual inquiry differently." Brunson v. Astrue, No. No. 10-6540, 2011 U.S. Dist. LEXIS 55457 (E.D. Pa. Apr. 14, 2011) (citations omitted).

## II.    THE PARTIES' MOTIONS

Plaintiff makes several assignments of error.  He contends that the ALJ erred by relying on his personal opinions and observations rather than the evidence; in dealing with the testimony of Plaintiff's father, Richard Kupiec; and erred in his consideration of the opinion of Plaintiff's treating psychiatrist.

2

An ALJ is not required to discuss or cite to every piece of evidence in the record. Cf. Dease v. Saul, No. 18-5106, 2020 U.S. Dist. LEXIS 56392, at *26 (E.D. Pa. Mar. 31, 2020). However, the ALJ must consider the entire record. This includes evidence regarding the need for a structured environment and non-medical evidence. See Grier v. Commissioner, 822 Fed. Appx. 166, 170-71 (3d Cir. 2020) (citing SSR 96-8P). With regard to lay testimony, one Court has stated as follows:

> When an ALJ is considering a pain and credibility assessment, the ALJ "must consider the entire case record, including . . . statements and other information provided by . . . other persons about the symptoms and how they affect the individual." … Lay witnesses, such as a family member or friend, may provide statements about how a claimant's daily life and ability to work are affected by these symptoms. … A lay witness must be evaluated by the ALJ in a way that allows a subsequent reviewer to follow his line of reasoning.

Dowell v. Berryhill, No. 16-1857, 2017 U.S. Dist. LEXIS 151503, at *13 (D.S.C. Sep. 18, 2017).

When considering medical opinion, supportability and consistency are the most important factors when determining the persuasiveness of a medical source's opinion;[1] other factors include the source's relationship with the claimant and specialization. 20 C.F.R. § 404.1520c(a), (c). The ALJ must explain how he "considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings," and "may, but [is] not required to," explain how he considered the remaining factors. Id. at § 404.1520c(b)(2).

---

[1] The regulations further provide as follows:

(1) Supportability. The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.

(2) Consistency. The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.

20 C.F.R. § 404.1520c(c)(1)-(2).

3

"Although the new standards are less stringent in their requirements for the treatment of medical opinions, they still require that the ALJ provide a coherent explanation of his reasoning." White v. Comm'r of Soc. Sec., No. 20-00588, 2021 U.S. Dist. LEXIS 43162, at *21 (N.D. Ohio Mar. 8, 2021).  It is well settled that an ALJ cannot "cherry pick" evidence. See Christian v. Comm'r of Soc. Sec. , No. 13-584, 2014 U.S. Dist. LEXIS 137957, at *12 (W.D. Pa. Sep. 30, 2014).

Moreover, these regulations "have not done away with the basic truth that the extent of the treatment relationship, and the extent of the examinations, are valued factors meant to be taken into account by the ALJ." Dany Z. v. Saul, No. 19-217, 2021 U.S. Dist. LEXIS 65805, at *42 (D. Vt. Mar. 31, 2021); see also Shawn H. v. Commissioner, No. 19-113, 2020 U.S. Dist. LEXIS 123589, at *19 (D. Vt. July 14, 2020).  "The new regulations cannot be read as a blank check giving ALJs permission to rely solely on agency consultants while dismissing treating physicians in a conclusory manner." Dany Z., 2021 U.S. Dist. LEXIS 65805, at *36.

Here, I am unable to conduct a meaningful, conclusive assessment. It is unclear whether certain evidence was rejected or ignored, and whether it would have impacted the ALJ's credibility or other determinations. The reasons for some of the ALJ's conclusions are likewise unclear.  For example, the ALJ determined that Plaintiff's statements concerning his symptoms were not entirely consistent with the medical evidence "and other evidence in the record for the reasons explained in this decision."  He stated that:

> As for the claimant's statements about the intensity, persistence, and limiting effects of his symptoms, they are inconsistent because the evidence of record shows that that the claimant is capable of more than he has alleged. For instance, although the claimant's parents have been noted to perform and support most of the claimant's activities of daily living, including preparing his meals and doing laundry (6F/3), the claimant reported that he is able to feed and water and take out his dog (3E). Further, the claimant reported that he has no problems with tending to his personal care and grooming needs (3E). He also is able to prepare simple meals for himself and can do some laundry (3E). The claimant also is able to go out shopping and to do shopping online (3E).

4

Exhibit 3E ("3E") is the Adult Function Report that Plaintiff completed. Therein, Plaintiff stated that he "occasionally" feeds the dog and gets him water, and "let[s] him outside once in a while"; his father walks and feeds the dog and takes him to the vet.  In addition, 3E does not indicate that Plaintiff has "no problems" tending to his personal care.  Plaintiff checked "yes" in response to "Do you need any special reminders to take care of personal needs and grooming?," and indicated that he required assistance selecting appropriate clothing and taking medications. In terms of simple meal preparation, 3E states that Plaintiff can pour a bowl of cereal and microwave hot dogs; it states that he does not regularly do laundry.  3E also states that Plaintiff goes grocery shopping with his father.  Exhibit 6F/3 is a set of treatment notes; later treatment notes reflect that Plaintiff was "learning" to do laundry, and the other evidence reflects Plaintiff's limited participation in that activity.  It is unclear how these activities are inconsistent with Plaintiff's statements regarding his difficulties, so as to undermine his credibility thereon.[2]

Moreover, it appears that some non-medical evidence may not have been considered.  For example, the ALJ referred to positive aspects of Plaintiff's schooling, such as his taking regular classes, staying on task the majority of the time, and completing assigned work. Plaintiff's father's testimony that his son had an aide with him throughout high school, however, which appears corroborated by school records, is not mentioned. The teacher who observed that Plaintiff was "on- task the majority of the time" also stated that Plaintiff benefited from extra cues/prompts to maintain focus."  In the same report, several other teachers stated that Plaintiff benefited from 1:1 assistance, extra time for assignments, extra cues, and organization assistance. In addition, the ALJ referred to a teacher's report that Plaintiff's "attentiveness and

---

[2] As described by the ALJ: "The claimant has alleged that he has difficulty staying on task, concentrating, and staying awake during the day (3E). He reported that he also has difficulty falling asleep at night (3E). He noted in his application materials that he has trouble with motivation and problems with performing math beyond addition and subtraction (3E)."

independence" at school had increased; omitted from the discussion is the fact that the same teacher also indicated that Plaintiff continued to benefit from "chunking large assignments and frequent monitoring."

In terms of the medical evidence, Dr. Milke, a non-examiner at the initial level, reviewed Plaintiff's records and issued an opinion on July 6, 2018, finding Plaintiff moderately limited in several areas. Dr. Milke further stated: "The report by claimant's own medical source has been reviewed and found to be acceptable and persuasive given the content and breadth of the information contained in the report." The form completed by Dr. Shajihan on June 13, 2018 notes that Plaintiff had been seen at the Watson Institute since 2009. Dr. Shajihan indicated that his conclusions were based on clinical observations, and not just the Plaintiff's subjective reports. He further stated as follows:

> Can become verbally aggressive if does not agree with others [sic] opinions. Andrew intolerant of others [sic] interests, may walk away during interaction. Very anxious in new situations. Needs lots of prompts, unable to recognize mistakes or function independently with complex tasks. Poor social skills.

The ALJ concluded, rather summarily, that Dr. Shajihan's opinion was "not consistent with or supported by the evidence of record, including actual treatment records, which showed generally unremarkable findings"; in contrast, he found Dr. Milke's opinion, "both consistent with and supported by the overall evidence of record…" The ALJ thus arrived at the following RFC: "… limited to work requiring the performance of only routine, repetitive tasks; only occasional judgment, decision-making, and workplace changes; and only occasional interaction with the public, coworkers, and supervisors."

Defendant urges that by reviewing the evidence that the ALJ recites, "the Court can easily discern the ALJ's path to finding that Dr. Shajihan's opinion was neither supported by nor consistent with the record." The fact remains, however, that two medical opinions were

considered – a non-examiner and a treating psychiatrist at an institution where Plaintiff had treated for approximately two decades.  The ALJ cursorily found the latter unpersuasive and the former persuasive.  These conclusions must be viewed in light of the potential omissions referenced supra, which could be viewed as consistent with and supportive of both Dr. Shajihan's opinion and Plaintiff's own statements.  The record also contains treatment records from Watson Institute that post-date Dr. Milke's record review.  These considerations could impact the ALJ's conclusions regarding the persuasiveness of the medical opinions, as well as Plaintiff's credibility. Cf. Widhson v. Kijakazi , No. 20-3343, 2021 U.S. Dist. LEXIS 130844 (E.D. Pa. July 13, 2021)

Finally, I address Plaintiff's contention that the ALJ substituted his lay judgment for the medical opinion of record. Referring to treatment notes commenting on Plaintiff's parents completing tasks for him, the ALJ told Plaintiff's father: "[I]t seems pretty clear that ---…That you seem to just be doing too much for him."  It is not apparent that the ALJ substituted his lay opinion for the medical opinion of record, and remand is not warranted on that basis. I do note, however, that there are no facts or opinion of record predicting or assessing Plaintiff's functioning in the absence of a supported environment, either at school or at home.

In light of the circumstances of this particular case, this matter will be remanded so that the ALJ may take the opportunity to further explain his assessment of the medical and non-medical evidence as discussed supra.  On remand, the ALJ should take the opportunity to reassess other considerations relating to Plaintiff's credibility and the overall analysis.

## CONCLUSION

For the foregoing reasons, Plaintiff's Motion will be granted and Defendant's denied. This matter will be remanded for further proceedings consistent with the foregoing Opinion. An appropriate Order follows.

BY THE COURT:

_Donetta F. Ambrose_

Donetta W. Ambrose
Senior Judge, U.S. District Court

Dated: October 28, 2021

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

JOSEPH L. TONGEL            )
                            ) No. 20-1192
     v.                     )

KILOLO KIJAKAZI,
Acting Commissioner
of Social Security

**ORDER**

AND NOW, this _____ day of August, 2021, it is hereby ORDERED, ADJUDGED, and DECREED that Plaintiff's Motion is granted, and Defendant's denied. This matter is remanded for further proceedings consistent with the foregoing Opinion.

                    BY THE COURT:

                    _____

                    Donetta W. Ambrose

                    Senior Judge, U.S. District Court